1 Law Offices of John H. Carmichael
John H. Carmichael (196416)
2 2535 Laguna Canyon Road, Suite E-6
Laguna Beach, California  92651
3 Telephone:     310.345.2525
Email:          jhclaw@gmail.com
4 *Attorney for Plaintiff*



FILED
CLERK, U.S. DISTRICT COURT

DEC 2 7 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

5

6

7 ## IN THE UNITED STATES DISTRICT COURT

8 ## FOR THE CENTRAL DISTRICT OF CALIFORNIA

9 **CV10  9926  ◄  SJO (Ex)**

10 Avicenna Development Corporation, *a California corporation,*          Case. No.

11                                        **COMPLAINT FOR:**
                                        **1. DIRECT COPYRIGHT**
                          *Plaintiff,*   **INFRINGEMENT;**
12                                        **2. INDUCING COPYRIGHT**
             *v.*                        **INFRINGEMENT;**
13                                        **3. TRADEMARK INFRINGEMENT**
                                        **AND UNFAIR COMPETITION;**
14 Samuel French, Inc., *a non-California* **4. UNJUST ENRICHMENT**
*corporation doing business in California,*
15                        *Defendant.*   **JURY DEMANDED**

16

17      Plaintiff Avicenna Development Corporation ("Avicenna") complains as follows,

18 incorporating all exhibits as if set forth where and as referenced:

19                        **NATURE OF THE CASE**

20      1.    This matter concerns knowing and willful infringement of Plaintiff

21 Avicenna's copyright, trademarks, and commercial rights in Peter S. Beagle's novel *A*

22 *Fine and Private Place* (the "Novel") by Defendant Samuel French, Inc. ("Samuel

23 French"), through Samuel French's unauthorized distribution, and unauthorized

24 licensing for performance, of a musical adaptation of the novel (the "Musical").

25      2.    Samuel French persisted in both distribution and performance licensing

Law Offices of John H. Carmichael • 2535 Laguna Canyon Rd, Ste E-6 • Laguna Beach, CA  92651

Law Offices of John H. Carmichael • 2535 Laguna Canyon Rd, Ste E-6 • Laguna Beach, CA  92651

despite being aware that the Musical was a derivative work subordinate to the rights in the Novel; despite having actual or constructive knowledge that the license authorizing creation of the Musical had expired on its own terms; and despite repeated written notification that Samuel French's continued distribution and licensing of the musical play was unauthorized.

## JURISDICTION AND VENUE

3.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (copyright infringement or validity).

4.    Venue and personal jurisdiction are proper in this District because Samuel French maintains a place of business and regional headquarters in this District at 7623 Sunset Boulevard, Hollywood, California, at which location it makes available to the public and offers for sale and rental infringing copies of the musical play and derivative works thereof and offers to license performances thereof.

## PARTIES

5.    Plaintiff Avicenna Development Corporation is a California corporation headquartered in San Mateo, California. Plaintiff Avicenna is the proper successor in interest by assignment to copyright and related claims of novelist Peter S. Beagle, a natural person residing in Oakland, California.

6.    Defendant Samuel French, Inc. is a non-California corporation headquartered at 45 West 25th Street, New York, New York, and maintaining a "Western Regional Headquarters" at 7623 Sunset Boulevard, Hollywood, California.

## CREATION AND LICENSING OF THE MUSICAL

7.    Peter S. Beagle's novel *A Fine and Private Place* was first published by Viking Press in 1960, and was timely registered with the United States Copyright Office under number A449044 and timely renewed under number RE376809. A copy

Law Offices of John H. Carmichael • 2535 Laguna Canyon Rd, Ste E-6 • Laguna Beach, CA 92651

of the renewal registration certificate is attached to this Complaint as Exhibit 1.

8.    In 1985, Peter S. Beagle agreed to allow, under terms of a written license, a musical play adaptation of *A Fine and Private Place*, to be written and produced under that title. A copy of the licensing agreement is attached to this Complaint as Exhibit 2 (the "Musical License").

9.    The Musical was properly registered for copyright in 1989 under number PAu 1–212–279. A copy of the registration certificate is attached to this Complaint as Exhibit 3.

10.    The Musical was first produced for the public pursuant to the Musical License in limited runs in 1989 at the Goodspeed Theatre in Connecticut and in 1990 at the American Stage Company in Teaneck, New Jersey.

11.    By the terms of the Musical License, the licensees did *not* obtain an unlimited right to further exploitation of the Musical absent "merger" as defined in the Musical License (see Exh. 2 at 7–9) through either or both of the productions described in ¶ 10. Such "merger" had not occurred by 1990.

12.    So as to facilitate further exploitation of the Musical through distribution by Defendant Samuel French and otherwise consistent with the Musical License, Peter S. Beagle allowed a limited-purpose extension of the Musical License in 1990. A copy of that extension is attached to this Complaint as Exhibit 4 (the "Musical License Extension").

13.    In 1991, the proprietors of the Musical signed a distribution agreement with Defendant Samuel French. A copy of that distribution agreement is attached to this Complaint as Exhibit 5 (the "Distribution Agreement").

14.    On information and belief, Samuel French would ordinarily have, and did, obtain copies of both the Musical License and the Musical License Extension in the

1  course of finalizing the Distribution Agreement.

2  ## TERMINATION OF LICENSING OF THE MUSICAL

3  15.   The proprietors of the Musical never fulfilled the conditions for "merger,"
4  even through the Musical License Extension.

5  16.   In May 2004, Peter S. Beagle and his manager became aware that the
6  proprietors of the Musical intended to, and had made substantial preparations to,
7  engage in revival performances of the Musical on the commercial stage in New York
8  City.

9  17.   After consultation with counsel and further communications, Peter S.
10  Beagle and his manager objected to any such revival performances on the ground
11  that, due to the lack of "merger," the Musical License had expired by its own terms
12  several years previously. Out of consideration for the reliance of third parties (such as
13  the crew, the actors, and the theatre itself), Peter S. Beagle and his manager allowed
14  the revival production to go forward during negotiations to resolve the licensing
15  issues.

16  18.   As confirmed by both reviews of the two prior performances described in ¶
17  10 and their attendance at the opening night performance of the revival of the
18  Musical, Peter S. Beagle and his manager each concluded that the quality of the
19  Musical tarnished and impaired the value of the Novel both directly and by
20  diminishing the opportunities for other exploitation of the Novel.

21  19.   Following breakdown of negotiations, the proprietors of the Musical filed
22  for arbitration before the American Arbitration Association in March 2006. The
23  validity of such arbitration depended upon the existence of an agreement to arbitrate
24  in the Musical License.

25  20.   Defendant Samuel French had contemporaneous actual and constructive

Law Offices of John H. Carmichael ● 2535 Laguna Canyon Rd, Ste E-6 ● Laguna Beach, CA  92651

*AVICENNA DEV'T CORP. V. SAMUEL FRENCH, INC.*
COMPLAINT

AVICENNA.AC24.CMPLT.DOC

Law Offices of John H. Carmichael • 2535 Laguna Canyon Rd, Ste E-6 • Laguna Beach, CA  92651

knowledge of the demand for arbitration and the dispute over the continuing existence of the Musical License.

21.   In September 2007, on motion by Peter S. Beagle, the arbitral panel determined that it had no jurisdiction to arbitrate, finding that "the contract referencing the arbitration agreement had expired" due to the absence of "merger." A copy of the arbitral decision is attached to this Complaint as Exhibit 6.

22.   Following further negotiations between the proprietors of the Musical and Peter S. Beagle, the proprietors agreed to withdraw the Musical from further distribution.

23.   On or about December 28, 2007, or shortly thereafter, on information and belief the proprietors of the Musical formally notified Defendant Samuel French of withdrawal of the Musical from distribution, licensing, and making available to the public.

24.   Samuel French has not formally communicated with Peter S. Beagle, or Avicenna, concerning any aspect of licensing of the Musical, including without limitation any acknowledgement of communications; any accounting; or any description of steps being taken to avoid infringement of rights in the Novel.

25.   Despite its knowledge of the termination of its license to do so, Samuel French has continued and continues to offer the Musical for:

(a)   Sale and/or performance rental of copies thereof, which necessarily infringe both the copyright in the Novel, and trademarks and other commercial rights in the Novel;

(b)   Licensing of performances thereof, which necessarily infringe both the copyright in the Novel, and trademarks and other commercial rights in the Novel; and

(c)   Sale of copies of a cast recording of the Musical revival production

Law Offices of John H. Carmichael ● 2535 Laguna Canyon Rd, Ste E-6 ● Laguna Beach, CA  92651

described in ¶¶ 16–18 above (the "Performance CD"), which necessarily infringe the copyright in the Novel, and trademarks and other commercial rights in the Novel.

26.   Samuel French has actually engaged in each of the infringements stated in ¶ 25 above, and continues to do so.

(a)   Samuel French's own web page catalog entry states that at least one customer has "bought" the script. A copy of that web page catalog entry, confirmed on December 3, 2010, is attached to this complaint as Exhibit 7.

(b)   Samuel French has licensed performances of the Musical despite its actual and constructive knowledge that it had no right to license such performances. A copy of such a performance license, to an innocent infringer that did not have either actual or constructive knowledge that Samuel French did not have the right to offer such a performance license, is attached to this complaint as Exhibit 8. That innocent infringer did actually perform the Musical pursuant to the purported "authorization" by Samuel French.

(c)   Samuel French's own web page catalog entry states that at least one customer has "bought" the Performance CD. A copy of that web page catalog entry, confirmed on December 3, 2010, is attached to this complaint as Exhibit 9.

27.   At no time has Samuel French accounted to Peter S. Beagle or to Plaintiff Avicenna for any infringements, benefits therefrom, or damages therefrom. Further, Samuel French has obstinately refused to respond to *any* communications from or on behalf of Plaintiff concerning the Musical.

## CLAIMS FOR RELIEF

### Count 1:
### Direct Copyright Infringement
#### (17 U.S.C. § 501 *et seq.*)

28.   Paragraphs 1–27 of this Complaint, including all exhibits referenced, are

1    incorporated as if fully set forth herein.

2        29.   By its own reproduction, sale, and/or rental of printed copies of the Musical

3    without license from the copyright holder of the Novel, Samuel French has directly

4    infringed the copyright in the Novel.

5        30.   By its own reproduction and/or sale of copies of the cast recording of the

6    Performance CD without license from the copyright holder of the Novel, Samuel

7    French has directly infringed the copyright in the Novel.

8        31.   By authorizing performances of, and collecting performance license fees for,

9    productions of the Musical by third parties without license from the copyright holder

10   of the Novel, Samuel French has directly infringed the copyright in the Novel.

11       32.   Each of Samuel French's direct infringements of the copyright in the Novel

12   has been knowing and willful.

13       33.   Samuel French's conduct and refusal to acknowledge communications

14   indicate a knowing and willful intent to continue direct infringements of the copyright

15   in the Novel.

16                              **Count 2:**
                   **Inducing Copyright Infringement**
17                     **(17 U.S.C. § 501 *et seq.*)**

18       34.   Paragraphs 1–33 of this Complaint, including all exhibits referenced, are

19   incorporated as if fully set forth herein.

20       35.   At least one direct infringement of the copyright in the Novel by a third

21   party has occurred, specifically the performances purportedly "authorized" by Samuel

22   French as described in ¶ 26(b)  and Exhibit 8.

23       36.   Samuel French continues to offer inducements to the public to infringe the

24   copyright in the Novel through its advertising of availability of the script of the

25   Musical; performance rights in the Musical; and the Performance CD.

*Law Offices of John H. Carmichael* ● *2535 Laguna Canyon Rd, Ste E-6* ● *Laguna Beach, CA  92651*

37.   Each type of inducement of copyright infringement by Samuel French has been knowing and willful.

38.   Samuel French's conduct and refusal to acknowledge communications indicate a knowing and willful intent to continue direct infringements of the copyright in the Novel.

### Count 3:
### Trademark Infringement and Unfair Competition
**(Common law; 15 U.S.C. § 1111 *et seq*.)**

39.   Paragraphs 1–38 of this Complaint, including all exhibits referenced, are incorporated as if fully set forth herein.

40.   By its offerings for performance, sale, and/or rental, Samuel French has and continues to hold itself out as an authorized, licensed source of the Musical, but lacks such authority.

41.   The continued availability of the Musical through Samuel French tarnishes the value of the rights in the Novel and the author's reputation.

42.   The continued unauthorized activities of Samuel French regarding the Musical harm, and will continue to harm, Avicenna's ability to exploit commercial rights in the Novel.

43.   Samuel French's obstinate refusal to respond to communications from and on behalf of the copyright holder make this an exceptional case under 15 U.S.C. § 1117.

44.   Avicenna has been substantially damaged by Samuel French's conduct.

### Count 4:
### Unjust Enrichment
**(Common law)**

45.   Paragraphs 1–44 of this Complaint, including all exhibits referenced, are incorporated as if fully set forth herein.

*Law Offices of John H. Carmichael • 2535 Laguna Canyon Rd, Ste E-6 • Laguna Beach, CA  92651*

*AVICENNA DEV'T CORP. V. SAMUEL FRENCH, INC.*
COMPLAINT

AVICENNA.AC24.CMPLT.DOC

Law Offices of John H. Carmichael ● 2535 Laguna Canyon Rd, Ste E-6 ● Laguna Beach, CA  92651

46.    Samuel French has obtained revenues from the conduct complained of.

47.    Samuel French had no legal right to such revenues.

48.    Samuel French was thereby unjustly enriched by the conduct complained of, to the detriment of Plaintiff.

49.    Samuel French has obstinately refused to account to Plaintiff concerning its revenues from the conduct complained of, or indeed to even acknowledge communications from Plaintiff concerning that conduct.

**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Avicenna Development Corporation prays that this Court enter judgment in favor of Plaintiff and against Defendant Samuel French, Inc., for:

1.    As elected by Plaintiff at trial, statutory or actual damages pursuant to the Copyright Act, enhanced for knowing and willful infringement as provided by statute;

2.    As elected by Plaintiff at trial, statutory or actual damages for infringement of Plaintiff's trademark and related rights, enhanced for knowing and willful infringement as provided by law;

3.    An accounting and disgorgement of profits, revenues, and other unjust enrichment of Defendant Samuel French;

4.    Appropriate injunctive relief, including without limitation prohibition on further infringements and/or inducement of third party infringements;

5.    An order directing destruction, or in the alternative turnover to Plaintiff, of all existing stock of the Musical and the Performance CD, at no cost to Plaintiff and with no offset or other compensation to Defendant Samuel French or to any third party;

6.    Pursuant to statutory authority, reimbursement of Plaintiff's attorney's

Law Offices of John H. Carmichael • 2535 Laguna Canyon Rd, Ste E-6 • Laguna Beach, CA  92651

1  fees;

2       7.    Plaintiff's costs and expenses of suit; and

3       8.    Such other relief as this Court may find just and appropriate.

4                             //jhcarmichael196416//

5  December 27, 2010

                              _____

6                               John H. Carmichael
                             Law Offices of John H. Carmichael

7                               2535 Laguna Canyon Road, Suite E-6
                             Laguna Beach, CA  92651

8                               *Attorney for Plaintiff*

9                    **JURY DEMAND**

10      Plaintiff demands trial by jury on each and every issue of fact, and each and

11  every cause of action, for which a jury trial right may exist.

12                           //jhcarmichael196416//

13  December 27, 2010

                              _____

14                               John H. Carmichael
                             Law Offices of John H. Carmichael

15                               2535 Laguna Canyon Road, Suite E-6
                             Laguna Beach, CA  92651

16                               *Attorney for Plaintiff*

17

18

19

20

21

22

23

24

25

## INDEX OF EXHIBITS

1       Renewal Registration Certificate RE376809

2       1985 Musical Licensing Agreement

3       Registration Certificate PAu 1–212–279

4       1990 Musical License Extension

5       1991 Distribution Agreement

6       2007 Arbitral Decision

7       December 3, 2010 Web Catalog Page for Play

8       February 2010 "Performance License" Invoice

9       December 3, 2010 Web Catalog Page for CD

# <u>EXHIBIT 1</u>

Renewal Registration Certificate RE376809
*A Fine and Private Place* (the "Novel")
*Complaint ¶ 7*



*LIBRARY OF CONGRESS*

## Copyright Office
## of the United States

*WASHINGTON, D.C.*

## ADDITIONAL CERTIFICATE OF REGISTRATION
## OF A CLAIM TO COPYRIGHT



THIS IS TO CERTIFY THAT THE STATE-
MENTS SET FORTH IN THE ATTACHED
HAVE BEEN MADE A PART OF THE
RECORDS OF THE COPYRIGHT OFFICE
WITH CLAIM OF COPYRIGHT REGIS-
TERED UNDER NUMBER

**RE 376–809**

IN TESTIMONY WHEREOF,
THE SEAL OF THIS OFFICE IS
AFFIXED HERETO ON

**March 3, 2006**



REGISTER OF COPYRIGHTS
United States of America

**REGISTER OF COPYRIGHTS**

C-731 June 1999 — 10,000

# FORM RE
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

RE   376 809

EFFECTIVE DATE OF RENEWAL REGISTRATION

FEB 26 1988

(Month)   (Day)   (Year)

**DO NOT WRITE ABOVE THIS LINE.   FOR COPYRIGHT OFFICE USE ONLY**

| ① Renewal Claimant(s) | **RENEWAL CLAIMANT(S), ADDRESS(ES), AND STATEMENT OF CLAIM:** (See Instructions) |
|---|---|

**1**
Name....... Peter S. Beagle
Address....... C/O McIntosh and Otis, Inc., 310 Madison Avenue, New York, NY 10017.
Claiming as....... the author
(Use appropriate statement from instructions)

**2**
Name.......
Address.......
Claiming as.......
(Use appropriate statement from instructions)

**3**
Name.......
Address.......
Claiming as.......
(Use appropriate statement from instructions)

**TITLE OF WORK IN WHICH RENEWAL IS CLAIMED:**

A FINE AND PRIVATE PLACE

**RENEWABLE MATTER:**
Copyright is claimed on the entire text except for about 4300 words from Ch. 6 which appeared in the May 1960 issue of Mademoiselle under the title "The Raven."

**CONTRIBUTION TO PERIODICAL OR COMPOSITE WORK:**
Title of periodical or composite work
If a periodical or other serial, give  Vol           No           Issue Date

| ③ Author(s) | **AUTHOR(S) OF RENEWABLE MATTER:** |
|---|---|

Peter S. Beagle

| ④ Facts of Original Registration | **ORIGINAL REGISTRATION NUMBER:** | **ORIGINAL COPYRIGHT CLAIMANT:** |
|---|---|---|

A 449044          Peter S. Beagle

**ORIGINAL DATE OF COPYRIGHT:**
• If the original registration for this work was made in published form, give.
.......... May     23, 1960  } OR {  • If the original registration for this work was made in unpublished form, give.
DATE OF REGISTRATION

0173020135

RE   376 809

EXAMINED BY:

CHECKED BY:

DEPOSIT ACCOUNT
FUNDS USED: ☑

RENEWAL APPLICATION RECEIVED
FEB 26 1988

REMITTANCE NUMBER AND DATE:

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

**RENEWAL FOR GROUP OF WORKS BY SAME AUTHOR:** To make a single registration for a group of works by the same individual author published as contributions to periodicals (see instructions), give full information about each contribution. If more space is needed, request continuation sheet (Form RE/CON).

**⑤** Renewal for Group of Works

**1**
Title of Contribution: ...........
Title of Periodical: ........... Vol ....... No ....... Issue Date ...........
Date of Publication: ........... (Month) (Day) (Year)   Registration Number: ...........

**2**
Title of Contribution: ...........
Title of Periodical: ........... Vol ....... No ....... Issue Date ...........
Date of Publication: ........... (Month) (Day) (Year)   Registration Number: ...........

**3**
Title of Contribution: ...........
Title of Periodical: ........... Vol ....... No ....... Issue Date ...........
Date of Publication: ........... (Month) (Day) (Year)   Registration Number: ...........

**4**
Title of Contribution: ...........
Title of Periodical: ........... Vol ....... No ....... Issue Date ...........
Date of Publication: ........... (Month) (Day) (Year)   Registration Number: ...........

**5**
Title of Contribution: ...........
Title of Periodical: ........... Vol ....... No ....... Issue Date ...........
Date of Publication: ........... (Month) (Day) (Year)   Registration Number: ...........

**6**
Title of Contribution: ...........
Title of Periodical: ........... Vol ....... No ....... Issue Date ...........
Date of Publication: ........... (Month) (Day) (Year)   Registration Number: ...........

**7**
Title of Contribution: ...........
Title of Periodical: ........... Vol ....... No ....... Issue Date ...........
Date of Publication: ........... (Month) (Day) (Year)   Registration Number: ...........

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: Viking Penguin Inc.

Account Number: DA 018074

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)
Name: T. Uehara
Address: as below (Apt.)
(City) (State) (ZIP)

**⑥** Fee and Correspondence

**CERTIFICATION:** I, the undersigned, hereby certify that I am the (Check one)
☐ renewal claimant   ☒ duly authorized agent of:   Peter S. Beagle
(Name of renewal claimant)
of the work identified in this application, and that the statements made by me in this application are correct to the best of my knowledge

Handwritten signature: (X) _[signature]_

Typed or printed name: Tsuyako Uehara

Date: February 23, 1988

**⑦** Certification (Application must be signed)

**MAIL CERTIFICATE TO**

VIKING PENGUIN INC.
40 W. 23rd ST.
(Number Street and Apartment Number)
NEW YORK, N. Y. 10010
(City) (State) (ZIP code)

(Certificate will be mailed in window envelope)

**⑧** Address for Return of Certificate

☆ U.S. GOVERNMENT PRINTING OFFICE: 1978—261-022/10

Apr. 1978 — 500,000

# <u>EXHIBIT 2</u>

1985 Musical Licensing Agreement
*Complaint ¶ 8*

# Exhibit A


# 1985 License (complete)

## DRAMATIZATION RIGHTS AGREEMENT

AGREEMENT made as of the 21st day of March , 1985 by and between PETER S. BEAGLE, c/o Robinson-Weintraub & Associates, Inc., 8428 Melrose Place, Los Angeles, California 90069, Attn: Stuart Robinson (hereinafter referred to as "Owner") and ERIK HAAGENSEN, c/o Harold Messing, P.C., Suite 1200, 10 Columbus Circle, New York, New York 10019 (hereinafter referred to as "Purchaser").

### W I T N E S S E T H:

FIRST: The Owner represents, warrants and agrees:

(a) That the Owner is the owner of a certain literary work presently entitled "A FINE AND PRIVATE PLACE" (hereinafter called the "Work"), the sole author of which is PETER S. BEAGLE; that the Work is wholly original with the aforementioned author and has not been copied in whole or in part from any other work; that the Work was published and/or registered for copyright as set forth in subdivision "(1)" of the annexed Schedule "A" and has not otherwise been published or registered for copyright; that all copyrights in the Work are valid, existing and unimpaired and that the Work is not in the public domain anywhere in the world where copyright protection is available for the Work; that the term "Work" as used herein includes also any and all

additional material, suggestions and ideas which the Owner may
have heretofore furnished or may hereafter furnish to Purchaser
or anyone on Purchaser's behalf in connection with the Work or
any play adapted therefrom and includes any and all present and
future versions, adaptations and sequels of the Work;

    (b)  Except for the rights granted by the Owner in the
instruments described in subdivision "(2)" of the annexed
Schedule "A," that the Owner is the sole and exclusive owner
throughtout the world of all rights of every kind and nature in
the Work; that the Owner is free, and has full and exclusive
warrant and authority, to make this agreement and grant the
rights herein granted; that the Owner has not heretofore granted,
sold, assigned, encumbered or otherwise disposed of any right,
title, interest, claim, contract, or commitment in or in connec-
tion with the Work similar or adverse to or inconsistent with the
rights granted to Purchaser or by which any of such rights or the
full enjoyment and exercise thereof by the Purchaser may be dimi-
nished, invalidated, impaired or affected; that subdivision "(2)"
of Schedule "A" includes all dispositions of or affecting the
Work heretofore made whether or not similar, adverse to or incon-
sistent herewith.

    (c)  That the Work does not, and the use of the Work
herein authorized will not, infringe upon the copyright of any
other work or violate the property or any right of privacy or any

-2-

other right of any person, firm or corporation, and that there
has never been any claim or litigation existing or threatened
involving the title, ownership or copyright in the Work or the
rights herein granted.

SECOND:   The Owner hereby grants, sells and assigns to
the Purchaser the following complete, sole and exclusive rights,
absolutely and forever throughout the world and in any and all
languages, in the Work, which the Purchaser may exercise or
cause, authorize or permit others to exercise:

(a)  To dramatize the Work and to make, write and com-
pose one or more dramatic or dramatico-musical plays (hereinafter
called the "Play") based upon and utilizing the Work, together
with the free and unrestricted right to use, adapt, translate,
change, rearrange, interpolate in, transpose, add to and subtract
from the Work, its situations, incidents, language, plot, theme,
characters, dialogue, title, sets, scenes, costume designs, pan-
tomime, direction, action, business, text descriptive matter,
ideas, names, songs, lyrics, music, or otherwise, all as
Purchaser may determine in Purchaser's sole discretion.

(b)  To produce and present, or cause to be produced and
presented, the Play on the speaking stage.

(c)  To own, make, perform, exhibit, produce, reproduce,
use, sell, publish, lease, license, encumber, copyright or other-

-3-

wise dispose or deal in the Play and, subject to the provisions of this Agreement, any dramatic, motion picture, radio, television or other versions and adaptations thereof, and to exercise all rights therein of every kind and nature now known or hereafter ascertained for any and all purposes and by any and all means.

(d)  To select and contract with one or more dramatists, adapters, and, if the Play be a musical play, with one or more bookwriters, composers and lyricists, and with any other authors (all hereinafter collectively referred to as the "Dramatists") to prepare the Play, as the Purchaser may determine in Purchaser's sole discretion.

THIRD:    In full consideration for the Owner's representations, warranties and agreements herein and the rights granted hereunder, the Purchaser agrees to pay to Owner, and Owner agrees to accept, the sum or sums set forth in subdivision "(3)B." of the annexed Schedule "A," subject to the following conditions:

(a)  The term "subsidiary rights" as used in subdivision "(3)B." of the annexed Schedule "A" and elsewhere in this agreement is defined to mean motion picture, radio, television, home video, second-class touring, stock, amateur, foreign language, condensed and tabloid version, foreign (outside of the United States, Canada and the British Isles), commercial tie-in and grand opera rights of the Play.

-4-

(b)  Any sums payable hereunder to the Owner with
respect to first-class legitimate stage productions of the Play
in the United States, Canada and the British Isles shall be
payable when royalties with respect thereto are paid to the
Dramatists and shall be accompanied by customary box office
statements.  All payments hereunder shall be waived with respect
to benefit performances in the United States for the Actors' Fund
of America if the Dramatists similarly waive royalties.

(c)  Any sums to be paid to the Owner with respect to
the disposition of subsidiary rights shall be deemed due and
payable as, if and when the net proceeds therefrom are actually
received and realized by the Dramatists in cash funds, and the
Owner's share thereof shall be computed after the deduction of
the share, if any, which any Producer or Manager shall be
entitled to receive pursuant to any production contract or
contracts for any presentation of the Play and after deduction of
customary agents' commissions, Motion Picture Negotiator's fees
and reasonable expenses.  If the Play be a musical play, the
Owner shall not be entitled to share in any proceeds derived from
the publication, mechanical reproduction, synchronization and
small performing rights in the music and lyrics of the Play or
proceeds derived from ASCAP, BMI or similar societies throughout
the world, or from any use of the separate musical compositions
of the Play for motion picture, radio, television or any other
purpose.

-5-

(d)  All payments to the Owner hereunder shall be sub-
ject to applicable currency exchange control, taxation and other
laws, regulations and orders.  If any sums in which the Owner
shares shall be "blocked," "frozen" or otherwise held in a
foreign country, the Owner's share may be disposited upon notice
to the Owner in the Owner's name in a bank or other dispository
in the foreign country at the Owner's risk and subject to appli-
cable foreign law, and such deposit shall be deemed payment to
the Owner.  The Owner's share of any funds converted from a
foreign currency shall be computed at the actual conversion rate
used for such conversion.

FOURTH:  In the event the Play shall not be produced
and presented on the first-class legitimate stage in the United
States on or before the production date set forth in subdivision
"(4)" of Schedule "A" as the same may be extended as provided
therein, all rights herein granted to Purchaser shall terminate
and revert to the Owner and thereupon the Owner and Purchaser
shall be released and discharged from any further liability or
obligation to the other except as otherwise expressly provided in
this paragraph FOURTH.  Upon such termination, neither the Owner
nor the Purchaser shall have any right, title or interest in the
aforesaid Play or any right to use or authorize the use thereof,
except however that any and all music, lyrics (whether or not
taken from or suggested by the Work) and musical compositions

-6-

written and composed for the Play (if it be a musical play) and
any and all situations, characters, incidents, plots, dialogue,
titles, names and other material originally conceived and created
by the Dramatists for the Play (whether or not it be a musical
play) and not contained in the Work shall remain the sole and
absolute property of the Purchaser and the Dramatists (as their
respective interests may appear) with the free and unrestricted
right to make any use or disposition thereof as they may desire
free from any claim by the Owner for any reason whatsoever.

　　　　FIFTH:    If the Play shall be produced and presented
within the time and in the manner set forth in paragraph FOURTH
and (a) have an official opening night performance of a first-
class production in New York City (which production budget shall
be not less than 1.5 million dollars); or (b) run for not less
than eighty-four (84) paid performances in any other first-class
production within the United States; or (c) run for not less than
eighty-four (84) paid performances in an "off-Broadway" produc-
tion and have earned the Author not less than $5,000.00; or (d)
have earned the Author not less than $10,000.00 in the aggregate
then the Work and all dramatic and musical rights of every kind
and nature therein now or hereafter known and in the copyright
and renewal copyright thereof shall be deemed merged in the Play
as part thereof, to the same extent as though the Play and the
Work were one single work, and the Purchaser shall have, and the

-7-

Owner does hereby convey, grant and assign to the Purchaser abso-
lutely and forever, the same dramatic and musical rights in the
Work as are acquired by or vested in the Purchaser hereunder in
the Play, together with the right to make and enter into any and
all contracts and to exercise all rights and privileges, or to
refrain from so doing with respect thereto as the Purchaser may
determine in Purchaser's sole discretion, without the necessity
of obtaining the consent, approval, signature or other action by
the Owner, provided, however, that if the Work has heretofore
been published as set forth in subdivision "(1)" of Schedule "A,"
the Owner reserves all book, novel, serial, magazine and
newspaper publication rights in and to the present text of the
Work and the revenue therefrom, but this reservation shall not
restrict or affect the exclusive right of the Purchaser to
publish the Play or any part or version thereof or to use or
authorize the use (in connection with the exploitation of motion
pictures based on the Play) of synopses, digests or versions of
the Work not exceeding 7,500 words in length.  It is agreed that
the Dramatists of the Play, together with the Owner, shall be
deemed the sole authors of the Play for all purposes.  The obli-
gations to the Owner under this agreement shall in no way affect,
lessen or impair the rights herein conveyed to the Purchaser and
in the event of any default in the payment of any sum of money or
other default under this agreement, the Owner shall not have any
right of reversion, rescission, approval or consent, nor can the

-8-

Owner interfere with any of the rights herein granted, but
nothing herein contained shall be construed to restrict the
Owner's right under this agreement to actions or proceedings for
the recovery of sums payable to the Owner hereunder.

If the Play shall be produced and presented within the
time and in the manner set forth in paragraph FOURTH, the Owner
agrees that the Assignment of All Rights hereto attached as
Exhibit "B" and made part hereof shall be effective and in full
force and effect and all of the rights and privileges granted
therein shall vest in and enure to the benefit of the Purchaser,
it being understood and agreed that the rights and privileges
set forth in the said Assignment of All rights shall be in addi-
tion to and not by way of limitation of the rights and privileges
otherwise granted in this agreement.

SIXTH:    The Play and any and all rights therein of
every kind and nature, now known or hereafter ascertained,
together with all copyrights and renewal or extended copyrights
thereof, and all rights appertaining thereto, shall become and
remain forever throughout the world the sole, complete, exclusive
and absolute property of the Purchaser, Dramatists and Owner as
their respective interests may appear and as they may elect and
agree among themselves.

SEVENTH: All agreements made by the Purchaser relating
to the production and presentation of the Play shall provide that

-9-

in all programs, houseboards and paid advertising (other than daily ABC ads), the Owner's name shall appear whenever the Dramatists' names appear, substantially in the form set forth in subdivision "(5)" of Schedule "A".

EIGHTH:   Except for the rights granted by the Owner to the Purchaser, pursuant to paragraph SECOND hereof, the Owner shall be free to dispose of his rights in the Work.  The Owner agrees to inform the Purchaser by written notice of any and all such dispositions within five (5) business days of entering into an agreement for such disposition.  Notwithstanding the foregoing, upon the merger of all rights pursuant to the provisions of paragraph FIFTH hereof and until the termination of the rights granted to the Purchaser, and of the rights which may become vested in the Dramatists and their heirs, next-of-kin, representatives, successors and assigns, and any owner of any copyright and renewal copyrights of the said Play, the Owner agrees not to grant, sell, assign, encumber or otherwise dispose of, or exercise or permit others to exercise, any rights of whatsoever kind or nature in the Work or any part thereof or in any versions, adaptations and/or sequels thereof or perform or do any act with respect thereto which may in any way diminish, invalidate, impair, affect or interfere with the full exercise and enjoyment of the rights granted hereunder, except only for the publication rights, if any, expressly reserved in paragraph FIFTH hereof.

-10-

NINTH:    The Owner agrees prior to the expiration of any copyright or copyrights in the Work, as the same may be extended, to renew or extend or procure the renewal or extension of any such copyright or copyrights and grant and assign to the Purchaser for such renewal or extended terms all the same rights herein granted and assigned to the Purchaser for the original copyright term.  The Owner hereby irrevocably appoints the Purchaser and each of the Dramatists as the Owner's attorney-in-fact to execute, deliver and record, on behalf of the Owner and in the name of the Owner or otherwise, any and all documents necessary or proper to secure the renewal or extension of any such copyright or copyrights and all rights therein for the term of such renewal or extension, and to execute, deliver and record, on behalf of the Owner and in the Owner's name or otherwise, any and all assignments and other documents necessary or proper to convey, grant and assign to the Purchaser of the rights hereby conveneyed, granted and assigned, for the term of such renewal or extension.  The Owner agrees that, in the event that the present Copyright Law of the United States of America, or any other country where said Work is or may hereafter be protected by copyright, shall be amended or changed or a new Copyright Law enacted, so that the term of the copyright is extended or enlarged, the Purchaser shall forthwith and automatically become entitled for such enlarged or extended term to all rights hereby conveyed, granted and assigned to the Purchaser for the present term of copyright and renewal copyright.

-11-

TENTH:    To the extent the Owner reserves publication rights hereunder, the Owner agrees not to publish or permit the publication of the Work in any country of the world unless the same shall be duly copyrighted and all steps and acts taken to secure such copyright, all to the end that the Work shall not fall into the public domain.

ELEVENTH:  The parties hereto agree to do and perform any acts and execute any and all documents that may be necessary to carry out and effectuate the purposes and intent of this agreement.  If the Owner shall fail to execute and deliver any such documents, the Purchaser and the Dramatists are each hereby irrevocably empowered and authorized to execute and deliver any such documents in the Owner's name as Owner's attorney-in-fact.

TWELFTH:  The Owner hereby agrees to defend, indemnify and hold harmless the Purchaser and the Dramatists and others claiming by, through or under them from and against any and all claims, liability, losses, damages, judgments, costs and expen- ses, including reasonable counsel fees, which may be made against or suffered or incurred by the Purchaser and/or the Dramatists and such others growing out of or by reason of any claims made with respect to, or any breach or non-performance of, any warranty, representation, agreement or undertaking of the Owner hereunder, it being understood that the foregoing shall not apply to any material added by the Dramatists which is not contained in the Work.

-12-

THIRTEENTH:    In the event of any dispute between the parties hereto (or their respective successors and assigns) arising under, out of, or in connection with the within agreement or the Play, or the breach of this agreement, its performance, interpretation, validity or making, the same shall be determined by arbitration in New York City, pursuant to the rules of the American Arbitration Association in force at the time, and any award rendered as a result thereof shall be final and conclusive upon the parties, and judgment thereon may be entered in the highest court of the forum (State, Federal or otherwise) having jurisdiction; provided that such arbitration shall be held before three (3) arbitrators, one to be selected by the claimant or claimants, one by the respondent or respondents and one from the panel of the Association by the arbitrators so selected.  The arbitrators are empowered in addition to all other powers con-ferred by law or the said rules to award specific performance and temporary or permanent injunctions (including mandatory injunctions) and restraints, partial relief, damages, costs and expenses and pre-hearing or post-hearing discovery, inspection, dispositions and accountings and to make any awards which may be just and fair to effectuate the purposes hereunder.

FOURTEENTH:    The Purchaser shall have the right to produce the Play as producer alone or in association with another party or parties, or to arrange for the production solely by another party or parties.  The Owner shall not be entitled to any

-13-

share of moneys received by the Purchaser or any of the Drama-
tists in their capacity as producers or associate producers of
the Play.  Nothing herein contained shall prevent the Purchaser
and/or the Dramatists from rendering additional services in con-
nection with the production of the Play or the exercise of any
rights therein or from receiving compensation therefor, all of
which shall at all times be their sole and exclusive property and
the Owner shall not be entitled to any share or percentage
thereof.

    FIFTEENTH:    All sums of money payable to the Owner
hereunder shall be paid to the order of the Owner and sent to the
address first above written.  All payments shall be accompanied
by appropriate and customary statements, and the Owner shall have
access at all reasonable times for inspection or relevant books
and records of the Purchaser with respect to dispositions of
rights in the Play in the proceeds of which the Owner shares.
The Owner represents and warrants that the Owner has not been
represented by any agent in connection with the Work except as
set forth in subdivision "(6)" of Schedule "A".

    SIXTEENTH:    This agreement together with any and all
Schedules hereto attached, including the Special Arrangements, if
any, set forth in subdivision "(6)" of Schedule "A," constitutes
the entire understanding between the parties with respect to the
subject matter hereof, and no party has made any representation,
warranty or agreement, express or implied, not herein expressly

-14-

set forth.  All matters concerning this agreement and its vali-
dity, performance or breach shall be binding upon and enure to
the benefit of the parties and their respective heirs, executors,
administrators, successors and assigns.  No agreement changing,
amending, extending, superceding, rescinding, terminating, or
discharging this agreement or by any provisions hereof shall be
valid unless in writing and signed by the party to be charged.
No waiver of any provisions hereunder shall be binding unless in
writing and signed by the party to be changed; no waiver of any
breach hereof shall be construed to be a continuing waiver or
consent to any subsequent breach hereof.

     SEVENTEENTH:  Wherever the term "Owner" or "Purchaser"
is used and there shall be more than one Owner and/or more than
one Purchaser, as evidenced from their signatures below, "Owner"
shall mean "Owners" and "Purchaser" shall be mean "Purchasers,"
as the case may be, and their obligations and liabilities
hereunder shall be joint and several.

     IN WITNESS WHEREOF, the parties hereto have executed
this agreement the day and year first above written.

 

PETER S. BEAGLE ("OWNER")

 

ERIK HAAGENSEN ("PURCHASER")

-15-

SCHEDULE "A" ATTACHED TO AND MADE PART OF DRAMATIZATION RIGHTS
AGREEMENT BETWEEN PETER S. BEAGLE ("OWNER") AND ERIK HAAGENSEN
("PURCHASER") PERTAINING TO "A FINE AND PRIVATE PLACE" ("WORK")

(1)  The Work was first published in the United States

by The Viking Press, Inc., on                          .  The Work

was registered for copyright in the United States Copyright

Office on                 in the name of                    under

entry No.             .  Publication and copyright registration

were made pursuant to contracts between owner and said publisher,

copies of which will be furnished by Owner to Purchaser upon

request.  The Work is protected by copyright in all countries of

the International Copyright Union under the Berne Convention and

in all countries of the Universal Copyright Convention.

(2)  Except for publication of the Work in book form

pursuant to the contract set forth in paragraph 1 above, Owner

has not at any time granted any rights whatsoever in the Work to

any person, firm or corporation.

(3)  A.  In the event that the play shall not have been

produced and presented on the legitimate stage in the United

States on or before the date falling twelve (12) months from the

date of this Agreement, and Purchaser shall have a book, music

and lyrics written, Purchaser shall have the right to extend the

outside permitted initial production date for a further period of

twelve (12) months upon written notice to Owner on or before the

date falling twelve (12) months after the effective date of this
Agreement.  In the event that the play shall not have been pro-
duced and presented on the legitimate stage in the United States
on or before the date falling two (2) years from the date of this
Agreement, but shall have had a "showcase" or "regional" or
"off-Broadway" production produced on or before such date,
Purchaser shall have the right to extend the outside permitted
initial production date for a further period of twelve (12)
months upon written notice to Owner on or before the date falling
two (2) years after the effective date of this Agreement.  In the
event that the play shall not have been produced and presented on
the legitimate stage in the United States on or before the date
falling three (3) years from the date of this Agreement, but if,
within such three (3) years period, Purchaser has entered into a
production contract for the production of the play with the dra-
matists, and Purchaser has further, within said period, engaged a
star and a director for the play, Purchaser shall have the right
to extend the outside permitted initial production date for a
further period of six (6) months from the expiration of said
three (3) year period, without further notice to Owner.

    B.   Owner shall be entitled to receive a royalty
equal to one percent (1%) of the gross weekly box office receipts
of each first-class presentation of the play in the United
States, Canada and Great Britain produced by or under the

-2-

authority of Producer (after deduction of all advances paid
hereunder).  The term "gross weekly box office receipts" as used
herein shall be defined as such term is then defined for drama-
tists under the rules of the Dramatists Guild, Inc., but in all
events after the deduction of all admission taxes, all theatre
party and benefit commissions and all sums required to be held
for the benefit of various theatrical union and guild pension and
welfare and similar funds.

In addition, Owner shall be entitled to receive that
portion of the so-called Authors' share of the proceeds received
from the disposition of the various subsidiary rights referred to
in paragraph third (a), after deduction of any share thereof to
which Purchaser may be entitled, in the portion that Owner's one
percent (1%) royalty bears to the aggregate royalties based on
the weekly box office receipts payable to all Authors, including
Owner, computed at their respective maximum royalty rates.
Notwithstanding the foregoing, in no event shall Owner's share of
such proceeds be less than twenty-five percent (25%) of the total
Authors' share.  There shall be no disposition of subsidiary
rights until all rights have merged pursuant to the provisions of
paragraph FIFTH hereof.

If the play is produced in Great Britain by Purchaser in
association with another producer or on lease from Purchaser to
another producer, by reason of which association or lease

Purchaser receives an advance against royalties, Owner shall
receive, as an advance against Owner's royalties with respect to
such British production, that part of such advance or lump sum as
the one percent (1%) royalty payable to Owner shall bear to the
total of all royalties based upon gross weekly box office
receipts payable to all Authors as royalties, including Owner,
computed at their maximum respective royalty rates.

Owner agrees that whenever all Authors of the play agree
to a reduction in or a waiver of their ordinary royalty rates or
a maximum limitation on weekly royalties, such as for out-of-town
performances prior to the New York City opening, or to a royalty
pool arrangement, the royalties payable to Owner hereunder shall
be reduced in the same proportion as the royalties paid to all
Authors of the play.

(4)  The production date in the United States shall be
twelve (12) months from the effective date of this Agreement,
subject to extension in accordance with paragraph (3)A. above.

(5)  Owner's credit shall be in the form of "based upon
the book by Peter S. Beagle."  However, if the title of the play
is not the title of the Work, such credit shall be in the form of
"based upon 'A Fine and Private Place' by Peter S. Beagle."
Owner's credit shall appear wherever the dramatists receive cre-
dit and directly beneath the credits to the dramatists.  Owner's

-4-

name shall appear in type and prominence at least 50% of the type and prominence of the name of the dramatists receiving the largest and most prominent credit. No credit whatsoever shall be required to be given Owner in ABC advertisement, teaser advertisements, radio or television advertising or advertisements primarily relating to reprints of critics' reviews.

(6)  In the event of any inconsistency between these Special Arrangements and any other provision of this contract or this Schedule "A," these Special Arrangements shall prevail.

A.  Purchaser agrees to consult with Owner regarding the choice of dramatists and all other authors and of the director and the cast. Notwithstanding the foregoing, all rights of approval concerning the Play and any and all rights therein, and/or the disposition thereof, an of the exercise of any rights granted by Owner to Purchaser hereunder, shall belong solely to Purchaser, the dramatists, the Owner and all other authors of the Play, as their interests may appear; it being specifically understood that Owner shall have such control or approvals in connection therewith in the same proportion as he shall be entitled to share in the proceeds from subsidiary rights, as described in paragraph "(3)B." hereof.

B.  The box office statements and statements with respect to the proceeds from the sale, lease or other disposition

of any rights in which Owner is entitled to share shall be the same in form as the statements received by the dramatists.

C.    Purchaser will assign to the dramatists and Owner the rights obtained hereunder to exploit the subsidiary rights in the Play, subject to Owner's participation in the proceeds therein, as provided for in this Agreement, such assignment to be pursuant to and subject to Purchaser's sharing of the proceeds thereof under the Minimum Basic Production Contract of the Dramatist Guild, or any other agreement.  The dramatists and Owner shall have the full and complete right to sell, lease, license or otherwise dispose of any and all such rights, subject to the foregoing.

D.    Except as may otherwise be provided in paragraph EIGHTH, Owner will not authorize, permit, or acquiesce in any dealings with the Work and/or the play which would be inconsistent with any rights herein granted, including but not limited to Purchaser's rights under Article FIFTH.

E.    Owner grants Purchaser the right to use and authorize others to use Owner's name, likeness, picture and biographical material, and limited portions of the material written and contributed by Owner for or in connection with the play, and limited portions of the Work, in and in connection with the advertising and promotion of the play and the advertising and promotion of any other rights held by Purchaser and the exercise thereof.

-6-

F.    Owner agrees to deliver to Purchaser, upon the exe-
cution of this Agreement, at least two (2) legible copies of the
published version of the Work.  Purchaser may retain such copies,
whether or not this contract terminates or expires.

G.    Purchaser may, subject to Owner's consent, which
consent shall not be unreasonably withheld, assign this Agreement
and/or delegate his obligations hereunder to any person, firm or
corporation.  Upon written assumption of Purchaser's obligations
hereunder by any such delegate or assignee, Purchaser shall
thereby automatically be relieved of those obligations so assumed
and/or assigned.

H.    In the event that United States copyright in the
Work expires, Owner shall not be entitled to receive any payments
thereafter hereunder, notwithstanding anything to the contrary
contained in this Agreement.

I.    Owner hereby employs and designates Robinson-
Weintraub & Associates, Inc., as his sole and exclusive agent
with respect to the Play, and any and all rights and uses therein
of any nature whatsoever, including, but not limited to, all pro-
duction rights and all subsidiary rights.

Owner does hereby authorize and direct Producer
(and any person, firm or corporation, acquiring any rights in the
Play) to pay all monies due or to become due to the Owner

-7-

hereunder (hereinafter referred to as said monies) to an in the name of said agent and to accept the receipt of said agent as full evidence and satisfaction of said payments.  In return for services rendered and to be rendered the Owner agrees to pay to and does hereby authorize said agent to receive and retain ten percent (10%) of his respective shares of said monies, including, but not limited to, his share of subsidiary rights.  All payments to the said agent hereunder shall be computed and based upon the gross sums payable to the Owner prior to the deduction of the Producer's share, if any.

_____
PETER S. BEAGLE ("OWNER")

_____
ERIK HAAGENSEN ("PURCHASER")

ERIC HAAGENSEN
c/o Harold Messing, Esq.
10 Columbus Circle
Suite 1200
New York, New York 10019

July 30, 1987

Mr. Peter S. Beagle
5517 Crystal Springs Drive, N.E.
Bainbridge Island, Washington 98110

Re:   Eric Haagensen w. Peter S. Beagle; A FINE AND
PRIVATE PLACE by Peter S. Beagle

Dear Mr. Beagle:

Reference is made to a dramatization rights agreement between us
dated as of the 21st day of March 1985, (the "Agreement").

Notwithstanding anything to the contrary which may be contained
in the Agreement, you hereby agree that I shall have until one
(1) year from the last presentation of the Play at the O'Neill
Center for the Performing Arts in which to have the Play
produced and presented on the legitimate stage in the United
States as either a "showcase" or "regional" production.  If,
within said one (1) year period, there shall have been such
"showcase" or "regional" production, I shall have a period of
one (1) additional year in which to have the Play produced and
presented on the legitimate stage in the United States as either
an off-Broadway or a so-called "first-class" production. If
within said one (1) additional year I have entered into a
production contract for the production of the Play and a star
and director have been engaged, you hereby agree that I shall
have the right to extend the outside permitted production date
for a further period of six (6) months from the expiration of
said one (1) additional year period, without further notice to
you.

In all other respects, the Agreement is hereby ratified and
confirmed.

Would you please indicate your agreement to the foregoing by
signing and returning the enclosed copy of this letter.

Very truly yours,

Eric Haagensen
"Purchaser"

Agreed to and Accepted:

Peter S. Beagle, "Owner"

                         STEVEN H. DAVID
                        165 W. 66th ST., 3N
                        NEW YORK, N.Y.  10023
                          (212) 724-7169


May 20, 1988


Mr. Peter S. Beagle
5517 Crystal Springs Drive, N.E.
Bainbridge Island, Washington  98110


        Re: Erik Haagensen w. Peter S. Beagle:
            "A FINE AND PRIVATE PLACE" By Peter S. Beagle


Dear Mr. Beagle:

Reference is made to a dramatization rights agreement between
yourself ("Owner") and Erik Haagensen ("Purchaser") dated as of
the 21st day of March 1985 as extended by a letter dated July 10,
1987, (the "Agreement").

By an agreement dated  April 1, 1988, (the "Production Contract")
I have aquired certain 2nd class and off-Broadway production
rights in the musico-dramatic version of "A FINE AND PRIVATE
PLACE" by Erik Haagensen and Richrd Isen.  You acknowledge that
by virtue of the Production Contract I am a third party
beneficiary of the Agreement and that purchaser has assigned to
me such rights that he has aquired under the Agreement as are
necessary for me to fully realize the benefits of the Production
Contract.

In consideration for the obligations that I have undertaken in
the Production Contract and notwithstanding anything to the
contrary in the Agreement, you agree that the first sentence of
paragraph FOURTH of the Agreement shall be deemed to be replaced
with the following two sentences:

        "In the event the Play shall not be produced and presented
        on the first class or legitimate stage in the United States
        or be presented for one performance off-Broadway on or
        before the production date set forth in the Production
        Contract between Richard Isen and Steven H. David dated
        April 1, 1988, all rights herein granted to Purchaser shall
        terminate and revert to the Owner and thereupon the Owner
        and the Purchaser shall be released and discharged from any
        further liability or obligation to the other except as
        otherwise expressly provided in this Paragraph FOURTH.  Said
        production date is April 1, 1989, but may be extended under
        the terms of the production contract to April 1, 1990."

2

In all other respects the agreement is ratified and confirmed.

Would you please indicate your agreement to the foregoing by signing and returning the enclosed copy of this letter.

Yours sincerely,

Steven H. David
Producer

Agreed to and Accepted:

Peter S. Beagle
"Owner"

Acknowledged:

Erik Haagensen
"Purchaser"

STEVEN H. DAVID
165 W. 66th ST., 3N
NEW YORK, N.Y.  10023
(212) 724-7169


May 25, 1988


Mr. Peter S. Beagle
5517 Crystal Springs Drive, N.E.
Bainbridge Island, Washington  98110


  Re: Erik Haagensen w. Peter S. Beagle;
    "A FINE AND PRIVATE PLACE" By Peter S. Beagle


Dear Mr. Beagle:

Reference is made to a dramatization rights agreement between
yourself ("Owner") and Erik Haagensen ("Purchaser") dated as of
the 21st day of March 1985 as extended by a letter dated July 10,
1987 and further extended by a letter from myself to you dated
May 20, 1988, (the "Agreement") and to an agreement between
Haagensen, Richard Isen and myself dated April 1, 1988 (the
"Production Contract").

Notwithstanding anything to the contrary which may be contained
in the Agreement, you hereby agree that the Agreement shall be
deemed to be modified as follows:

  1. The term "subsidiary rights" as referred to in
  Paragraph THIRD of the Agreement, subdivision (3)B of
  the annexed schedule "A" and elsewhere in the Agreement
  shall not be deemed to include foreign rights in New
  Zealand or Australia.

  2.  Alternative (c) in the first sentence of Paragraph
  FIFTH shall be deemed to be modified as follows:

  "(c) run for not less than a "qualifying run of the
  Play" as defined in the Production Contract between
  Steven H. David, Erik Haagensen and Richard Isen dated
  April 1, 1988 (a copy of which definition is attached
  as Schedule "B");"

In consideration for your agreement to the modifications above, I
agree to pay you the following amounts as non-returnable advances
against royalties.

  1. Upon execution of this letter, $500.00.

2

2. In the event that the Production Date in the Production Contract between myself Richard Isen and Erik Haagensen is extended an additional 6 months beyond April 1, ~~1989~~, an additional $400.00.

3. In the event that the Production Date in the Production Contract is extended on a monthly basis after the six month extension, $100.00 for each month of extension. It is understood that there shall be no more than 6 monthly extensions and that in no event shall the Production Date be extended beyond April 1, 1990.

4. Upon capitalization of an off-Broadway production for no less than $240,000.00, the difference between any payments made under #1-3 above and $2,500.00 which shall be a further advance against royalties

5. Upon Merger of all rights in the Play, a payment of $2,500.00 which shall not be recoupable from royalties.

In all other respects the Agreement is confirmed and ratafied.

Would you please indicate your agreement to the foregoing by signing and returning the enclosed copy of this letter.

Yours sincerely,

Steven H. David
Producer

Agreed to and Accepted:

Peter S. Beagle
"Owner"

Acknowledged:

Erik Haagensen
"Purchaser"

SCHEDULE "B" ATTACHED TO AND MADE PART OF DRAMATIZATION RIGHTS
AGREEMENT BETWEEN PETER S. BEAGLE ("OWNER") AND ERIK HAAGENSEN
("PURCHASER") PERTAINING TO "A FINE AND PRIVATE PLACE" ("WORK")

----------------------------------------------------------------------

A "qualifying run of the Play" means the presentation of at least
21 paid public performances.  Up to seven of these performances
may be regional, LORT or second class performances outside of New
York City.  Up to eight of these performances may be off Broadway
preview performances.  The remaining performances must be regular
paid off Broadway performances.  Performances presented by others
pursuant to the authority of or "by arrangement with" Producer
shall be considered the same as performances presented solely by
Producer for purposes of determining if a qualifying run of the
Play has taken place.

A "qualifying performance of the Play" means a paid public
performance of the Play off-Broadway, a paid public second class
performance or a paid public performance of the Play at a
regional or LORT Theatre.

The term "off-Broadway" shall be defined as it is defined in the
APC but includes performances in "middle theatres" and in those
LORT theaters in New York City generally accepted in the theater
industry to be considered "off Broadway theaters" such as The
Newhouse, The Roundabout and the Manhattan Theater Club.

For the purpose of determining if a "qualifying run of the Play"
has taken place any performance given outside of New York City
shally count as one-half of a performance and an official off-
Broadway opening night of the Play must take place.

## A FINE AND PRIVATE PLACE

Reference is made to an agreement among Steven H. David, Erik Haagensen and Richard Isen dated as of April 1, 1988 and an agreement between Steven H. David and Peter S. Beagle dated May 20, 1988 and an agreement between Steven H. David and Peter S. Beagle dated May 25, 1988 (collectively referred to as "the Agreements").

In consideration of the payment of $1.00, and other good and valuable consideration, receipt of which is hereby acknowledged, Steve David hereby sells, transfers and assigns all of his rights and delegates all of his obligations under the Agreements to Erik Haagensen.

Haagensen hereby accepts this assignment and delegation and undertakes to fulfil and perform all of David's obligations under the Agreements. ✳ *SD  RI  Eϑϑ*

David hereby releases Haagensen and Isen, their heirs, executors, administrators, successors and assigns from and against all claims, actions, agreements and liabilities whatsoever that he may have by reason of or relating to the Agreements and/or otherwise relating to "A Fine and Private Place" ("the Play").

Haagensen and Isen each release David and his heirs, executors, administrators, successors and assign from and against all claims, actions, agreements and liabilities whatsoever that they or either of them may have by reason of or relating to the Agreements and/or the Play.

✳ *Haagensen further indemnifies David against all claims, actions, agreements and liabilities that Peter S. Beagle may have by reason of or relating to the Agreements and/or the Play.  SD  RI  Eϑϑ*

AGT-305

In Witness Whereof, the parties hereto have signed this
agreement as of ~~December 21, 1989~~ January 1, 1990. SD KI EgH

_____
Steven H. David

_____
Erik Haagensen

_____
Richard Isen

2

# EXHIBIT 3

Registration Certificate PAu 1–212–279
*A Fine and Private Place* (the "Musical")
*Complaint ¶ 3*



*LIBRARY OF CONGRESS*

## Copyright Office
## of the United States

*WASHINGTON, D.C.*

## ADDITIONAL CERTIFICATE OF REGISTRATION
## OF A CLAIM TO COPYRIGHT



THIS IS TO CERTIFY THAT THE STATE-
MENTS SET FORTH IN THE ATTACHED
HAVE BEEN MADE A PART OF THE
RECORDS OF THE COPYRIGHT OFFICE
WITH CLAIM OF COPYRIGHT REGIS-
TERED UNDER NUMBER

**PAu 1-212-297**

IN TESTIMONY WHEREOF,
THE SEAL OF THIS OFFICE IS
AFFIXED HERETO ON

**March 3, 2006**

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

**REGISTER OF COPYRIGHTS**

C-731 June 1999 — 10,000

**FORM PA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PAu 1 212 297

PA      PAU

EFFECTIVE DATE OF REGISTRATION

APR 03 1989

Month    Day    Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**

A FINE AND PRIVATE PLACE

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**NATURE OF THIS WORK ▼** See instructions

A Musical Play

**2**

**NAME OF AUTHOR ▼**
Richard Isen

**DATES OF BIRTH AND DEATH**
Year Born ▼ 1956   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
   Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Music

**NAME OF AUTHOR ▼**
Erik Haagensen

**DATES OF BIRTH AND DEATH**
Year Born ▼ 1957   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.A.
   Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Book and lyrics

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
   Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**3**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1988 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information Month ▶   Day ▶   Year ▶
ONLY if this work has been published.
◀ Nation

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Richard Isen
21 Bleecker St.
N.Y., N.Y. 10012

Erik Haagensen
155 West 68th St #925
N.Y., N.Y. 10023

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
APR 03 1989
ONE DEPOSIT RECEIVED
APR 03 1989
TWO DEPOSITS RECEIVED
REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE
OFFICE USE ONLY

• See detailed instructions.    • Sign the form at line 8.    Page 1 of ___ pages

FORM PA

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
  Yes

☐ DEPOSIT ACCOUNT
  FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

PAu 1 212 297

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼         Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

Derivative Work based on the novel "A Fine And Private Place"
written by Peter S. Beagle

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

The Novel Was Adapted into a Musical Play

**6**

See instructions
before completing
this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                          Account Number ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

Richard Isen
21 Bleecker St.
New York, NY 10012

Area Code & Telephone Number ► 212/228-6907

Be sure to
give your
daytime phone
◄ number.

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☒ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
                       Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.

Richard Isen    Erik Haagensen        date ► March 24, 1989

Handwritten signature (X) ▼

**8**

**MAIL
CERTIFI-
CATE TO**

Certificate
will be
mailed in
window
envelope

Name ▼
Richard Isen
Number/Street/Apartment Number ▼
21 Bleecker Street
City/State/ZIP ▼
New York, N.Y. 10012

Have you:
• Completed all necessary
  spaces?
• Signed your application in space
  8?
• Enclosed check or money order
  for $10 payable to Register of
  Copyrights?
• Enclosed your deposit material
  with the application and fee?

MAIL TO: Register of Copyrights,
Library of Congress, Washington
D.C. 20559

**9**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in
connection with the application, shall be fined not more than $2,500.

# <u>EXHIBIT 4</u>

1990 Musical License Extension
*Complaint ¶ 12*

LAW OFFICES OF
# HAROLD MESSING

10 COLUMBUS CIRCLE, NEW YORK, N.Y. 10019
212 541-8893                    CABLE: ROSEBUD

November 8, 1990

Mr. Peter Beagle
5517 Crystal Springs Drive, NE
Bainbridge Island, Washington 98110

                Re:  Erik Haagensen w. Peter Beagle;
                     A FINE AND PRIVATE PLACE

Dear Mr. Beagle:

Erik Haagensen has asked me to write to you concerning interest
expressed by Samuel French, Inc. in publishing an acting version
of the musical and licensing it for stock and amateur
production.

The terms of your agreement with Erik, dated March 21, 1985, do
not permit him to enter into that agreement until a "merger" has
taken place (see Paragraph FIFTH of the Agreement).

Since the conditions of Paragraph FIFTH have not yet been
fulfilled, we are asking you at this time to waive those
conditions solely for the purpose of allowing Erik to proceed
with Samuel French.  If you agree to do so, you will, of course,
be forwarded a copy of the proposed agreement.

The terms of your agreement with Erik provide that you will
receive not less than 25% of the "Author's share of income
therefrom (after deduction of 10% agent's commission).

Please feel free to contact me if you have any questions.  If
you agree to the foregoing, would you please sign the enclosed
copy of this letter in the space provided and return it to me.

Thank you.

                                        Sincerely yours,

                                        Harold Messing

AGREED TO AND ACCEPTED:

PETER BEAGLE

HM/h

cc: Erik Haagensen

# EXHIBIT 5

1991 Distribution Agreement
*Complaint ¶ 13*

AGREEMENT made and entered into this *31* day of *May* *1991* 1990, by and between ERIK HAAGENSEN and RICHARD ISEN, *c/o Harold Messing, 33 Cavalry Road, Westport, CT 06880,* ~~c/o William Morris Agency, Inc., Attention: Peter Franklin, 1350 Avenue of Americas, New York, N.Y. 10019,~~ party of the first part, hereinafter referred to as "the OWNERS", and SAMUEL FRENCH, INC., a New Jersey State Corporation with office at 45 West 25th Street, New York, N.Y.  10010, party of the second part, hereinafter referred to as "the AGENT":

## W I T N E S S E T H :

WHEREAS, the OWNERS warrant and represent that between themselves they are sole and exclusive owners, for all English-speaking countries of the world (hereinafter referred to as "the Territory"), of the right of publication of the acting edition of the book (including the lyrics) in paper covers, and the stock and amateur performing rights upon the living stage of the dramatico-musical composition or musical play in two acts entitled:

## "A FINE AND PRIVATE PLACE"

(hereinafter referred to as "the Work"), including the exclusive right to license the use of the lyrics and the music thereof in connection with such performing rights, the book and the lyrics of the Work having been written by Erik Haagensen, and the music of the Work having been composed by Richard Isen, and

WHEREAS, the OWNERS warrant and represent that they have not heretofore sold, assigned, transferred, mortgaged, pledged, encumbered or disposed of, in whole or in part, any of the said publication (insofar as the acting edition in paper covers is concerned), or stock and amateur performing rights in the Work for the Territory, and that the said rights are free and clear of all claims and encumbrances, and

WHEREAS, it is the desire of the OWNERS that the AGENT shall have the exclusive agency for the purpose of licensing, leasing and renting the Work for English-language stock and amateur production



the living stage in the Territory for the full term of any and
all copyrights on the Work and throughout any and all renewals thereof,
and furthermore that the AGENT shall have the exclusive right to publish
the book (including the lyrics) of the Work in the acting edition in
paper covers and to vend copies of the same in the Territory, and the
exclusive right to license, lease and rent the orchestral parts (includ-
ing piano-conductor's score, instrumental scores, and vocal scores) and
manuscript copies of the Work in connection with stock and amateur pro-
duction thereof upon the living stage in the Territory, also for the
full term of any and all copyrights on the Work and throughout any and
all renewals thereof,

NOW THEREFORE, in consideration of the sum of One Dollar ($1)
lawful money of the United States of America by each of the parties
to the other in hand paid and of the mutual covenants and condi-
tions hereinafter set forth, it is agreed by and between the
parties hereto as follows:

(1). The OWNERS do now hereby constitute and appoint the AGENT
their exclusive agent for the Territory, for the full term of any
and all copyrights on the Play, "A FINE AND PRIVATE PLACE", and
throughout any and all renewals thereof, for the purpose of licensing,
leasing and renting the Play for English-language stock production (and
it is understood that stock production hereunder shall include any and
all productions of any kind that are given in any theatre or by any
group which has normally been known and handled as stock, including
but not limited to productions that may be given under so-called
Equity "Hollywood Area Theatre", "Bay Area Theatre", "Council of
Off-Loop Theatres" (COLT), "League of Resident Theatres" (LORT),
"Regional Theatre", "Cafe", "Dinner Theatre", and "Repertory"
contracts, excepting productions in New York City) and for English-
language amateur production, including productions by Little Thea-
tres, Community Drama Associations, Universities, Colleges, High
Schools, Churches, Clubs, and other amateur organizations incident

-2-



(2). The AGENT shall exercise its discretion in securing the best terms possible for stock and amateur production of the Work. The AGENT agrees to place the Work in its active catalogues during the term of this Agreement and to use its best efforts in good faith to secure the maximum number of licenses with the highest royalty obtainable for the licensing of the Work.

(2). It is understood and agreed that for its services here-under the AGENT shall be entitled to receive and deduct a commission of Twenty Percent (20%) of any and all royalties or monies received for amateur production of the Work, and a commission of Ten Percent (10%) of any and all royalties or monies received for stock production of the Work.

(3). The AGENT shall submit to the OWNERS, through their author-ized representative, William Morris Agency, Inc., in February and August of each year, statements of all gross royalties or monies received for amateur production of the Work during the preceding six (6) month periods ending November 30th and May 31st respectively, and monthly statements of all gross royalties or monies received for stock production of the Work (except for those periods during which no royalties may have been received for amateur or stock production of the Work), such statements to be accompanied by checks to the order of William Morris Agency, Inc., for any sums collected by the AGENT from these sources, less the AGENT'S commissions as specified above. The payment by the AGENT to William Morris Agency, Inc. for the accounts of the OWNERS, of any and all royalties or monies, including the advance payments hereinafter stipulated and book royalties, shall be considered as equivalent to the payment of same directly to the OWNERS by the AGENT shall be a full and complete discharge of the AGENT'S obligation to each of the OWNERS in this respect.

(4). Release of the Play for stock and amateur production in the Territory hereunder, or in any part of the Territory hereunder, shall be made subject to the written consent and permission of the OWNERS or their authorized representative, William Morris Agency, Inc.

-3-



(5). The AGENT shall have and is hereby given the exclusive right ⊙f publication of the English-language acting edition of the book and lyrics of the Work paper covers and the vending of copies thereof in the Territory for the full period of any and all copyrights on the Work and throughout any and all renewals thereof. The AGENT shall pay the entire cost of composition, plates and printing and shall publish the book and lyrics of the Work in the acting edition in paper covers, to retail in the Territory at a price of Four Dollars and Fifty Cents ($4.50) per copy, or more at the AGENT'S discretion. The AGENT shall pay to the OWNERS a total book royalty of Ten Percent (10%) of the catalogue retail selling price on any and all copies of the Play sold in such paper-covered acting edition shall render to the OWNERS, through their authorized representative, Willim Morris Agency, Inc., in October of each year as of April 1st of the same year accountings of book sales together with payments for any sums that may be due to the OWNERS therefrom.

(6). A.  No changes shall be made in the text of the book and lyrics of the Work for publication hereunder without the prior written permission of the OWNERS as their interests may appear.  Any changes permitted shall become the absolute property of the OWNERS.

B.  Galley proofs of the book(including the lyrics) of the Work shall be submitted to the OWNERS for their approval or correction. The OWNERS agree to pay all expense, if any, for alterations requested by them in the plates or in type, other than those which may be necessitated by printers' or editors' errors, costing in excess of Ten Percent (10%) of the cost of the orininal composition.

C.  Each of the OWNERS shall receive at least ten (10) free copies of the AGENT'S printed acting edition of the book and lyrics upon publication.

(7).  Copyrights.

A.  If the book, lyrics and music have been copyrighted, then the complete following copyright information pertaining to the Work shall be filled in in "Exhibit A" attached hereto and made a part hereof; and the AGENT shall copyright its paper-covered acting edition of the book (including the lyrics) in the names of the copyright owners.

-4-



B. If the book and lyrics of the Work have not been copyrighted, the the AGENT shall apply for and obtain copyright on its paper-covered acting edition of the book and lyrics of the Work, as and when published, in the names of the OWNERS.

C. The AGENT agrees that in the exercise of the rights granted to it hereunder, it shall at all times comply with all laws respecting copyrights and shall take no actions which would threaten or jeopardize any of the OWNERS' rights (including, without limitation, copyrights on the Work). The AGENT further agrees that in exercising the rights granted to it hereunder, it shall at all times comply with and fulfill any requirements on which copyright protection for the Play in the Territory may be conditioned.

(8.) The OWNERS agree to deliver to the AGENT upon the signing of this Agreement the following items (hereinafter referred to as "the material"), the receipt whereof is hereby acknowledged:

A. A full and complete prompt acting manuscript of the book (including the lyrics) of the Work, such prompt acting manuscript to contain, in addition to the text, all cues, OWNERS' stage directions, property and costume plots, ground plans (indicating the position of furniture, windows, doors, entrances, exits, stairs, platforms, etc., in the form of a simple line drawing such as is illustrated by the copy of a sample ground plan attached hereto), a description of characters, and any further material or information which the OWNERS and the AGENT shall deem necessary for the proper exploitation of the Work hereunder, except for matter not owned by the OWNERS.

B. A complete masters or deschon copy of the orchestration of the Work, including piano-conductor's score, instrumental and vocal scores (principal and chorus parts), all properly cued.

(9.) The AGENT is hereby given the right to reproduce all the material listed in Clause (8) hereof, including the right to make or cause to be made photostated or mimeographed directors' manuscripts of the book (including the lyrics) of the Work, and the right to reproduce the orchestration (including piano-conductor's score,

-5-



instrumental scores, and vocal scores) in sufficient quantity for use in connection with stock and amateur productions of the Work. The AGENT shall pay the entire cost of reproducing the manuscripts and the orchestral material from the masters or deschons furnished to the AGENT by the OWNERS, but shall not pay the cost, if any, of correcting the orchestration or of recopying the orchestration should any of this be found necessary for the proper use of the orchestra- tion by stock and amateur companies producing the Work. Such costs, if any, shall be borne by the OWNERS in the following manner: If such correcting or recopying are necessary as aforesaid, and if the OWNERS request it of the AGENT, the AGENT shall pay the amount of such costs to the person or persons who may do the work of correcting or recopying, but the amount of such costs if paid by the AGENT shall be deducted from the amount of the advance(s) hereinafter stipulated to be paid to the OWNERS, and the amount of such costs paid by the AGENT shall be considered as part of the advance(s) to the OWNERS and shall be recouped by the AGENT from royalties to become due to the OWNERS from stock and amateur production of the Work hereunder.

(10.)  The AGENT is hereby given the sole and exlusive right, for the full period of any and all copyrights on the Work and through- out any and all renewals thereof, to lease, license and rent the said material referred to in Clauses 8 and 9 hereof in connection with stock and amateur productions of the Work hereunder. Any and all rental fees received by the AGENT for the use of the said material on loan in connection with productions of the Work hereunder shall be retained by the AGENT. The said material shall not be sold and shall contain all appropriate copyright notices. The AGENT shall not charge a higher rental fee for the use of the material on loan than the AGENT charges for the use of such material of other comparable musical plays of like calibre.

(11.)  The AGENT shall pay to the OWNERS, through their authorized representative, ~~William Morris Agency, Inc.~~ Harold Messing, at the times and in the events indicated below, the following sums as non-returnable advances against royalties to accrue to the accounts of the OWNERS from stock and amateur production of the Work hereunder:



A.  Upon the execution of this Agreement and upon the AGENT'S receipt of all the material listed in Clause (8) hereof, the sum of THREE THOUSAND DOLLARS ($3,000.00), the receipt where-of is hereby acknowledged.

B.  In the event that the Work opens in a New York City production, then the AGENT shall pay to the OWNERS, within fif-teen (15) days after the official opening performance of such production, the additional sum of TWO THOUSAND DOLLARS ($2,000.00).

C.  For each complete month of the run of the Work in the New York City production from the official opening performance (not including preview performances) the AGENT shall pay to the OWNERS, within fifteen (15) days after the date of complete release of the stock and amateur rights of the Work in the Territory (these rights having been partially or completely withdrawn in accordance with Clause 4 hereof), the sum of TWO THOUSAND DOLLARS ($2,000.00), up to a possible maximum of ten (10) complete months of the New York City production run of the Work.

(12).  All rights in the Work not specifically granted to the AGENT herein are reserved to the OWNERS for their own use and dis-position, with the right to exercise and make full use of such reserved without such exercise and use being considered in conflict or in competi-tion with the rights in the Work herein granted to the AGENT.  Without limiting the generality of the foregoing, it is understood that the rights reserved to the OWNERS include the exclusive right to sell, li-cense, lease and rent any hard-covered edition and any soft-covered edi-tion of the Work provided such editions are for reading purposes only, and not for use as instructions to actors and directors for performance and production purposes (i.e., any edition of the Work other than an English-language soft-covered edition), and the right to license, at any and all times and in any and all places, first-class productions of the Work (including first-class bus-and-truck productions of the Work).  The OWNERS agree, however, that they will not permit or allow any first-class professional production of the Work to play in any stock theatre of the United States and Canada, as "stock theatres and "stock rights" of the Play are granted to the AGENT and defined in Clause (1) hereof.

(13).  This Agreement shall be construed and enforced under and pur-suant to the laws of the State of New York, applicable to contracts made and entirely to be performed within the State of New York.



(14). A. Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in New York City, N. Y., in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof and may thereafter be enforced as a judgment of such court. Each party hereto shall designate one arbitrator, and both shall agree upon a third arbitrator.

B. Any failure on the part of the AGENT to make payments or render statements at the time or times provided in this Agreement shall be grounds for the OWNERS to terminate this Agreement by written notification to the AGENT; provided that prior to the giving of such written notification, the OWNERS has first demanded in writing that such default be cured, and the AGENT has failed or neglected to cure it within fifteen (15) days of its receipt of the OWNERS' demand. Any waiver of the foregoing provisions in any one instance shall not be deemed to be a waiver with respect to any other instance.

(15). The AGENT shall have no right to assign this Agreement, or any of its rights hereunder, without the prior written approval of the OWNERS. No such assignment shall relieve the AGENT of any obligation or liability hereunder.

(16). This Agreement shall terminate, and all rights granted hereunder shall revert to the OWNERS, automatically and without necessity of any notification, in the event of the dissolution, bankruptcy, assignment for the benefit of creditors, or reorganization, whether voluntary or involuntary, of the AGENT.

(17). In the event the AGENT drops the Play from its active catalogues, all rights in the Play herein granted to the AGENT shall revert to the OWNERS.

(18). The OWNERS or their representative shall have the right at all reasonable times to inspect and copy the books and records of the AGENT in connection with the payment of royalties pursuant to Clause 3 hereof, as well as the payment of book royalties pursuant to Clause 5 hereof.

-8-



.19).  All license agreements entered into by the AGENT with
_spect to productions of the Play shall prohibit any changes in
the text thereof.  A notice in the acting edition of the Play
shall set forth the foregoing restriction.

(20).  All acting editions of the book (including the lyrics)
of the Work published hereunder and all licenses issued by the
AGENT for production of the Work hereunder shall require the li-
censees to give credit to the OWNERS as authors of the Work in
all programs to be distributed in connection with performances
of the Work as hereinafter set forth, and in all instances in
which the title of the Work appears for the purpose of adverti-
sing, publicizing or otherwise exploiting the Work and/or a
production thereof, including, without limitation, programs,
souvenir books and playbills, the names of the OWNERS must
also appear on a separate line in which no other matter appears,
immediately following the title of the Work, and must appear in
size of type not less than Fifty Percent (50%) of the size of
type accorded the title.  In addition, the AGENT agrees (a) in
all acting editions of the Work which the AGENT is authorized to
publish hereunder and (b) in all advertising or publicity in con-
nection therewith, the names of the OWNERS shall appear in accor-
dance with the further provisions of this clause, except in the
AGENT'S catalogue blurb.  The billing of the OWNERS shall appear
immediately following the title of the Work with no other name or
matter appearing on the line on which the OWNERS' names appear and
shall be in size of type at least Fifty Percent (50%) of the size
of type used for the title of the Work.  The billing of the OWNERS
shall appear in substantially the following form:

(Name of Producer)

presents

"A FINE AND PRIVATE PLACE"

Book and lyrics by      Music by

ERIC HAAGENSEN      RICHARD ISEN

based upon the book by Peter S. Beagle

(20).  The AGENT agrees that upon written notification from
the OWNERS it shall suspend all licensing under this Agreement with-
in a radius of One Hundred (100) miles from the location of any

-9- 

first-class production of the Work, such suspension to continue in full force and effect until the expiration of the production rights granted to the producer of the first-class production. The aforesaid suspension shall not apply to licenses granted by the AGENT prior to its receipt of the said notification from the OWNERS.

(21). The OWNERS warrant and represent that they have full right to enter into this Agreement and agrees to indemnify, hold harmless and defend the AGENT, its successors, assigns and legal representatives from any and all claims or proceedings, finally sustained, that may be taken on the ground that this Agreement is in violation of any existing agreement or copyright, or that the Work, "A FINE", or any part of it, is in any manner libelous or an invasion of the right of privacy of any person, firm or corporation. The AGENT agrees not to settle any such claim or proceeding without the OWNERS' written consent.

(22). The AGENT agrees to indemnify, hold harmless and defend the OWNERS, their successors, assigns and legal representatives from any final judgment that may be taken based upon any act of commission or omission on the part of the AGENT in violation of the terms and conditions of this Agreement. The OWNERS agree that they will not settle any such claims or proceedings without the written consent of the AGENT.

(23). This Agreement shall be binding upon the parties hereto, their respective executors, administrators, legal

-10-



representatives, successors and assigns and may not be altered, modified or cancelled (except as herein specifically provided), except by written instrument signed by both parties hereto.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

WITNESS:                          As to the OWNERS:

_____    _____
                                  Eric Haagensen

_____    _____
                                  Richard Isen

As to the AGENT:

SAMUEL FRENCH, INC.

_Everard Leon Stovall_    Per: _____
                                  M. Abbott Van Nostrand, President

-11-

COPY

# EXHIBIT 6

2007 Arbitral Decision
*Complaint ¶ 21*

## AMERICAN ARBITRATION ASSOCIATION

**In the Matter of Arbitration Between:**

13-140-E-000762-06

Erik Haagensen
          and
Peter S. Beagle

---

### DECISION ON MOTION TO DISMISS CLAIMS FOR LACK OF JURISDICTION

Pursuant to the Commercial Arbitration Rules of the American Arbitration Association (AAA), and after consideration of the submissions of the parties, the following is the decision of the panel of arbitrators by a vote of 2 -1:

Because the contract referencing arbitration had expired , the current dispute between the parties is not the subject matter for arbitration.

This arbitration is therefore discontiued.

Dated:   September 14, 2007

Paul Adler                    Richard Bennett                    I respectfully dissent.

David Pfeffer

# EXHIBIT 7

December 3, 2010 Web Catalog Page for Play
*Complaint ¶ 26(a)*



**Play Publishers and Authors' Representatives**



Home » Store » Musicals » 8154

My Account  |  Cart Contents  |  Checkout

■Search All

**Please enter TITLE below**



☐ Check to search KEYWORD in item description.
**(use also to search for AUTHOR)**
**Advanced Search**

■**Information**

Licensing (Royalty) Information
Application for Performance Rights (Licensing Form)
Play Submissions
Contact Us
Shipping & Returns
Privacy Notice
Conditions of Use
Our Locations
FAQ Amateur Musicals
Contests & Festivals

■**Categories**

Acting (Technique and Business)
Acting for Kids
Anthologies & Collections
Blackouts & Revue Sketches
Books / Filmmaking
Books / Screenplays
Books About Playwrights
Broadway / Musical Theater
Cast Recordings on CD
Catalogues
Christmas Plays->
Classics (Chekhov, Ibsen)
Classics (O'Neill)
Classics (Pirandello, Strindberg)
Classics (Shaw)
Comedy
Dialects
Full Length Plays->
Monologues, Readings and Scenes
Mugs, T-shirts, Caps, Bags, Pads
Murder Mysteries
**Musicals**->
   Cast CD Recordings
   One-Act Non-Royalty->
   Piano/Vocal Score
   Posters
Religious Plays->
Shakespeare
Short Plays->
Sound Effects
Theatre for Youth->
Vocal Selections

# Fine and Private Place, A
[8154]

**$8.50**

Musical

Book and Lyrics by Erik Haagensen. Music by Richard Isen. Adapted from the novel by Peter S. Beagle.

3m, 2f (or 2m, 2f) plus 1 raven (m. or f.).

Exterior

This charming love story is about two lost souls buried in a cemetery who fall in love, an eccentric old man who can see and converse with the inhabitants of the graves and a delightful Jewish widow who often visits her buried husband. A crisis arises that will separate the young couple. The young man has been deemed a suicide and must be removed from consecrated ground. Only the old man can help them. A Fine and Private Place premiered to sellout crowds at the Goodspeed Opera House. It is a happy, whimsical, sentimental, up beat show which will delight audiences of all ages.

"An unconventional musical displaying originality and heart. Often-impressive work. Regionals looking for an earnest and economical musical should give this tombstone tuner an afterlife." --*Variety*

"Appealing! A wistful, gently eccentric musical with a ghostly glow of romance." --*The New Yorker*

"Engaging! Lovely songs! Musical and lyrical sophistication." --*The New York Post*

Terms quoted on application. Music available on rental.

Demo Tape available on request.

**Standard rental package includes:**
Piano/Conductor's Score
Bass
Percussion
(No Chorus Books available.)

**Click below for additional materials:**

A Fine and Private Place - CD

Quantity: 1

**Add to Cart**

■**Customers who bought this product also purchased**

Snow Queen, The    How to Eat Like a Child    Spitfire Grill, The

Clue: The Musical    Glimpses of the Moon    Funny Business - The Musical

**Shopping Cart**

0 items

■**Tell A Friend**

Tell someone you know about this product.

Friday 03 December, 2010

Case 2:10-cv-09926-SJO -E   Document 1   Filed 12/27/10   Page 71 of 80   Page ID #:95

Copyright © 2009 **Samuel French, Inc.**
All rights reserved.

# **EXHIBIT 8**

February 2010 "Performance License" Invoice
*Complaint ¶ 26(b)*

# SAMUEL FRENCH
## FOUNDED 1830
# Order Form - Samuel French Musicals

---

**STEP 1: SHIPPING INFORMATION** Please complete the following information as verification of your order.

**SHOW TITLE:** A FINE AND PRIVATE PLACE  
**ORGANIZATION:** Xenia Area Community Theater  
**STREET ADDRESS (NOT A PO BOX):** 45 E. Second Street,  
**CITY:** Xenia                    **STATE:** OH  
**PHONE:**                         **FAX:**

**PERFORMANCE DATES:** 5/28/2010-6/6/2010  
**CONTACT:** Ms. Cheryl Dern

**ZIP:** 45385-0000  
**EMAIL:** rdnemo@aol.com

**STEP 2: PURCHASED MATERIALS** Note: Libretti (scripts) are not included in most rental packages – please fill out below to order.

| | Quantity | | Price | | Total |
|---|---|---|---|---|---|
| LIBRETTI (SCRIPTS) | _____ | | x $_____ | = | $_____ |
| POSTERS | _____ | (see website for price and avail.) | x $_____ | = | $_____ |
| | | | **TOTAL PURCHASED MATERIALS** | | $_____ |

**STEP 3: ADDITIONAL/ADVANCE RENTAL MATERIALS**

| Additional Materials: | $ per month | Quantity | Months to Be Rented* | | Total |
|---|---|---|---|---|---|
| PIANO/CONDUCTOR SCORE | $55.00 x | _____ | x _____ | = | $_____ |
| CHORUS BOOKS | $10.00 x | _____ | x _____ | = | $_____ |
| ORCHESTRA PARTS | $20.00 x | _____ | x _____ | = | $_____ |

Indicate here which orchestra parts_____

*pd 2/10/10= #1823*

| Advance Materials: | $ per month | Quantity | Months in Advance of Rental Period* | | Total |
|---|---|---|---|---|---|
| PIANO/CONDUCTOR SCORE | $55.00 x | _____ | x _____ | = | $_____ |
| CHORUS BOOKS | $10.00 x | _____ | x _____ | = | $_____ |
| ORCHESTRA PARTS | $20.00 x | _____ | x _____ | = | $_____ |

Indicate here which orchestra parts_____

**TOTAL SECTION 3: ADDITIONAL/ADVANCE RENTAL**                    $_____  
*rental period includes (only) the months preceding the first performance date.

**STEP 4: PAYMENT** (If paying by credit card, please complete the attached credit card authorization form.)

**LICENSING AGREEMENT TOTAL**

| | |
|---|---|
| Licensing Fee: | $500.00 |
| Rental Fee: | $225.00 |
| Security Deposit | $100.00 |
| Jerome Robbins Fee (Peter Pan only) | |
| Shipping and Handling Charge | $25.00 |
| **SUBTOTAL:** | **$850.00** |

**ORDER FORM**

Purchased Materials (Total from STEP 2 above)          $ _____

Additional/Advance Rental (Total from STEP 3 above)    $ _____

**GRAND TOTAL** (please add LICENSING AGREEMENT SUBTOTAL with your ORDER FORM TOTAL):  $ **850.00**

Please include check payable to Samuel French, Inc. – Please note: all rented materials to be returned 3 days after final performance, to SFI Warehouse, 206 Main St. Hurleyville, NY 12747

# EXHIBIT 9

December 3, 2010 Web Catalog Page for CD
*Complaint ¶ 26(c)*



SAMUEL FRENCH

*Play Publishers and Authors' Representatives*

FOUNDED 1830



Home » Store » Cast Recordings on CD » 58157

My Account | Cart Contents | Checkout

**Search All**

**Please enter TITLE below**

☐ Check to search KEYWORD in item description.
**(use also to search for AUTHOR)**

**Advanced Search**

**Information**

Licensing (Royalty) Information
Application for Performance Rights (Licensing Form)
Play Submissions
Contact Us
Shipping & Returns
Privacy Notice
Conditions of Use
Our Locations
FAQ Amateur Musicals
Contests & Festivals

**Categories**

Acting (Technique and Business)
Acting for Kids
Anthologies & Collections
Blackouts & Revue Sketches
Books / Filmmaking
Books / Screenplays
Books About Playwrights
Broadway / Musical Theater
**Cast Recordings on CD**
Catalogues
Christmas Plays->
Classics (Chekhov, Ibsen)
Classics (O'Neill)
Classics (Pirandello, Strindberg
Classics (Shaw)
Comedy
Dialects
Full Length Plays->
Monologues, Readings and Scenes
Mugs, T-shirts, Caps, Bags, Pads
Murder Mysteries
Musicals->
One-Act Non-Royalty->
Piano/Vocal Score
Posters
Religious Plays->
Shakespeare
Short Plays->
Sound Effects
Theatre for Youth->
Vocal Selections

## A Fine and Private Place (Cast Recording CD)

[58157]

Cast Recording

**Click below for additional materials:**

A Fine and Private Place (script)

$17.95

**Shopping Cart**

0 items

**Tell A Friend**

Tell someone you know about this product.

Quantity: 1

Add to Cart

**Customers who bought this product also purchased**

Zero Hour          Adrift in Macao          Adrift in Macao (Cast Recording CD)

My Deah          Going to the Chapel          Mack and Mabel (Cast Recording CD)

**Friday 03 December, 2010**

Samuel French, Inc. The House of Plays & Musical Plays for Over...          http://www.samuelfrench.com/store/product_info.php/product...

Copyright © 2009 **Samuel French, Inc.**
All rights reserved.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV10- 9926 SJO (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Law Offices of John H. Carmichael
John H. Carmichael (196416)
2535 Laguna Canyon Road, Suite E-6
Laguna Beach, California  92651
Telephone: 310.345.2525
Email:  jhclaw@gmail.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Avicenna Development Corporation, a California
corporation,

PLAINTIFF(S)

v.

Samuel French, Inc., a non-California
corporation doing business in California,

DEFENDANT(S).

CASE NUMBER

**CV10 9926 SJO** (Ex)

**SUMMONS**

TO:   DEFENDANT(S): **Samuel French, Inc.**

A lawsuit has been filed against you.

Within ~~20~~ 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, **John H. Carmichael**_____, whose address is **2535 Laguna Canyon Rd, Ste E-6, Laguna Beach, CA  92651**_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ DEC 27 2010 _____

By: _____ CHRISTOPHER POWERS

Deputy Clerk

*(Seal of the Court)*

1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Avicenna Development Corporation, a California corporation, | Samuel French, Inc., a non-California corporation doing business in California, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Law Offices of John H. Carmichael<br>John H. Carmichael (196416)<br>2535 Laguna Canyon Road, Suite E-6<br>Laguna Beach, California  92651 | {not known} |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No     ☑ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 U.S.C. §§ 106, 501 (copyright infringement); 15 U.S.C. § 1111 (trademark infringement); common-law unjust enrichment

**VII. NATURE OF SUIT** (Place an X in one box only.)

| | CONTRACT | PERSONAL INJURY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | **FORFEITURE / PENALTY** | |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 610 Agriculture | **PROPERTY RIGHTS** |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | | ☐ 840 Trademark |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | **IMMIGRATION** | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 865 RSI (405(g)) |
| | ☐ 240 Torts to Land | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | ☐ 871 IRS-Third Party 26 USC 7609 |

| CIVIL RIGHTS | |
|---|---|
| ☐ 422 Appeal 28 USC 158 | |
| ☐ 423 Withdrawal 28 USC 157 | |
| ☐ 441 Voting | |
| ☐ 442 Employment | |
| ☐ 443 Housing/Acco-mmodations | |
| ☐ 444 Welfare | |
| ☐ 445 American with Disabilities -Employment | |
| ☐ 446 American with Disabilities -Other | |
| ☐ 440 Other Civil Rights | |

**CV10    9926**

**FOR OFFICE USE ONLY:**     Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)    ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | San Mateo County |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date **December 27, 2010**

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |